Filed 12/28/23  In re I.M. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re I.M., a Person Coming Under the Juvenile Court Law. | B326193 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP06413A) |
| Plaintiff and Respondent, | |
| v. | |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mary E. Kelly, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

A.M. (Mother), the mother of three-year-old I.M., appeals from the juvenile court's order terminating parental rights and freeing the child for adoption under Welfare and Institutions Code[1] section 366.26. Mother contends the order terminating parental rights must be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to exercise reasonable diligence in attempting to locate the alleged father of I.M., and to provide him with notice of the dependency proceedings. We conclude Mother forfeited her claim by failing to raise any objection in the juvenile court. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Dependency petition

In November 2020, Mother gave birth to I.M. outside a convenience store. When officers responded to the scene, Mother stated she knew she was pregnant and planned to flush the baby down the toilet, but the store clerk did not allow her into the restroom. Mother also admitted she smoked methamphetamines and drank several shots of vodka prior to giving birth. I.M. was transported to the hospital for life-saving treatment, and Mother was arrested for child endangerment. Both Mother and I.M. tested positive for methamphetamine.

On December 4, 2020, DCFS filed a dependency petition for I.M. under section 300, subdivision (b)(1). The petition alleged I.M. had suffered, or was at substantial risk of suffering, serious physical harm based on Mother's substance abuse. On December 9, 2020, the juvenile court held the detention hearing. The court

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

detained I.M. from Mother, and deferred making any paternity findings pending the parents' appearance. Following I.M.'s discharge from the hospital, DCFS placed the child in the foster home of Mr. and Mrs. V.

## II. Jurisdictional and dispositional hearing

In February 2021, DCFS interviewed Mother for its jurisdictional and dispositional report. At the time, Mother was participating in a residential substance abuse program. Mother reported that I.M.'s father was named Marcos. She did not know his last name, but thought it might be "R[]." She also did not know his date of birth, but believed he was about 37 years old. Mother met Marcos through Facebook and had known him for about a year and a half. She did not know him well, however, and did not have a telephone number or other contact information for him. Mother believed Marcos was homeless and slept in a tent under a bridge by a riverbed. He used to live with his mother in Pico Rivera, but she did not know the names of his parents and had never met his family. His last job was as a sander or welder. According to Mother, the maternal grandmother told her Marcos came to her home looking for Mother after he learned she was in an inpatient drug program. Mother did not know how Marcos found out she was attending a program.

At a May 19, 2021 arraignment hearing, Mother made her first appearance in the case and was appointed counsel. Mother submitted a parentage questionnaire for I.M. in which she identified Marcos R. as I.M.'s father. She indicated that Marcos was not present at the child's birth, did not sign the birth certificate, was not married to or residing with Mother at the time of the birth, and never held himself out as the child's father.

3

She listed Marcos's birthdate as unknown, and stated that he could possibly be located on Facebook because that was where they met.

After reviewing the parentage questionnaire, the juvenile court inquired if Mother knew Marcos's age. Mother's counsel replied that Marcos "might be in his 30's, perhaps 37, but she can't be sure." The court also asked if Mother had a Facebook address for Marcos. Following a pause in the proceedings, the court ordered Mother to provide DCFS with "whatever information she has regarding contact with [Marcos] on Facebook," including any names or account numbers. The court ordered DCFS to "discuss that with Mother and then complete the due diligence with a Facebook search, if any of those are current." The court found Marcos to be an alleged father based on the information provided by Mother.

On June 11, 2021, DCFS completed a due diligence search using Marcos's first and last name, but was unable to locate him. In its declaration of due diligence, DCFS reported that it searched certain computer databases, which yielded no results because it lacked sufficient identifying information for Marcos, such as his date of birth and social security number. The record does not disclose whether DCFS searched Facebook or other social media platforms as part of its due diligence, or whether it followed up with Mother regarding her contact with Marcos on Facebook. There is also no indication that DCFS asked the maternal grandmother if Marcos left his contact information when he visited her home looking for Mother.

On July 22, 2021, the juvenile court held a combined jurisdictional and dispositional hearing. The court began by asking Mother's counsel whether she had any objection to finding

4

that notice was proper. Counsel stated she did not. The court found that notice of the proceedings had been properly provided. The court also found that DCFS had completed a due diligence search for Marcos and his whereabouts were unknown. The court sustained the section 300 petition as amended, declared I.M. a dependent of the court, and removed the child from Mother's custody. The court granted reunification services to Mother, but not to Marcos because he was an alleged father.

## III. Supplemental petition

On January 19, 2022, the juvenile court held the six-month review hearing. Without objection, the court found that notice of the hearing was proper. The court found that Mother was in substantial compliance with her case plan, and that returning I.M. to her care would not be detrimental to the child. The court released I.M. to Mother under supervision of DCFS on the condition that Mother reside in DCFS-approved housing.

At the time of the six-month review hearing, Mother was residing in a sober living facility. However, less than a month later, Mother left the facility with I.M., and DCFS could not locate them. On February 9, 2022, the police found Mother pushing I.M. in a broken stroller, with child not dressed appropriately for the cold weather. Mother claimed she was on her way to Pomona, which was 20 miles away, and admitted to using methamphetamines. Following her arrest for child endangerment, Mother told DCFS there were no relatives who could care for I.M. She also said Marcos had not been involved in I.M.'s life, she had not had any contact with Marcos for the past two years, and she did not know his whereabouts.

On February 14, 2022, DCFS filed a supplemental petition for I.M. under section 387 based on Mother's continued substance

abuse. At a February 16, 2022 detention hearing, the juvenile court ordered I.M. detained from Mother. DCFS placed I.M. back in the home of Mr. and Mrs. V. with whom he had previously resided.

On April 14, 2022, the juvenile court sustained the section 387 petition. At a May 16, 2022 dispositional hearing, the court removed I.M. from Mother's custody and ordered the child be suitably placed by DCFS. The court bypassed reunification services for Mother based on her chronic and extensive substance abuse and resistance to treatment. The court set the matter for a section 366.26 permanency planning hearing.

## IV. Permanency planning hearing

On June 6, 2022, DCFS submitted a second declaration of due diligence regarding its search for Marcos. DCFS again reported that it had conducted a limited search of certain computerized databases, which yielded no results. DCFS further reported that it had not attempted to locate Marcos using social media because it lacked identifying information for him, specifically his date of birth and social security number. DCFS asked the court to order that notice of the permanency planning hearing be served on Marcos by publication under section 294.

At a June 13, 2022 progress report hearing, the juvenile court found that DCFS completed a proper due diligence search for Marcos. The court ordered DCFS to proceed with notice by publication in a newspaper of general circulation. The minute order for the hearing does not show any objections to the court's ruling.

In its section 366.26 report filed on September 12, 2022, DCFS advised the court that it had served Marcos with notice of the permanency planning hearing by publication in the Daily

6

Commerce. DCFS originally posted the notice on various dates in July 2022. However, due to a misspelling in I.M.'s name, DCFS reposted the notice with the correct spelling and updated hearing date on September 15, 22, and 29, 2022, and October 6, 2022. In an interim review report filed on December 8, 2022, DCFS indicated Marcos's whereabouts remained unknown. DCFS also reported that Mr. and Mrs. V., who had been I.M.'s primary caregivers since his birth, were committed to adopting the child and providing him with a permanent home.

On December 12, 2022, the juvenile court held the section 366.26 permanency planning hearing. Mother appeared and was represented by counsel. At the start of the hearing, the court asked whether there was any objection to notice. Mother's counsel stated that there was "no objection to notice," but that Mother was seeking a continuance to file a section 388 petition based on her progress in her programs. The court denied Mother's request for a continuance and found that notice of the hearing was proper.

Mother's counsel asked the court not to terminate parental rights based on the beneficial parent-child relationship exception. Counsel for I.M. and counsel for DCFS joined in arguing that the exception did not apply. The court found, by clear and convincing evidence, that I.M. was adoptable and that no exception to the termination of parental rights applied in this case. The court terminated the parental rights of Mother, Marcos, and any other person who claimed to be a parent of I.M., and declared the child free for adoption. The court designated Mr. and Mrs. V. as I.M.'s prospective adoptive parents.

Mother filed a timely appeal.

7

# DISCUSSION

On appeal, Mother seeks reversal of the order terminating both her and Marcos's parental rights over I.M. Mother's appeal, however, is predicated solely on the claim that DCFS violated Marcos's due process rights by failing to conduct a reasonable due diligence search to locate Marcos and provide him with notice of the dependency proceedings. Mother also contends that she has standing to challenge the lack of proper notice to Marcos because their interests are sufficiently intertwined.

In response, DCFS argues that Mother does not have standing to assert a claim of error based on Marcos's right to notice, and that even if Mother has standing, she forfeited the claim by failing to raise any objection in the juvenile court. DCFS further asserts that Mother's claim fails on the merits because it exercised reasonable diligence in attempting to locate Marcos and notify him of the proceedings, and any alleged error in failing to provide him with proper notice was harmless.

We conclude Mother forfeited her due process claim based on DCFS's alleged lack of proper notice to Marcos, because she failed to object to notice at any time before the juvenile court.

## I. Assuming Mother has standing to assert a claim based on Marcos's right to notice, she forfeited the claim by failing to object in the juvenile court

As a general rule, " ' "[w]here the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests." ' " (*In re J.R.* (2022) 82 Cal.App.5th 569, 581 (*J.R.*).) However, "[i]n the absence of such intertwined interests, 'a parent is precluded from raising issues on appeal which did not affect his or her own rights.' " (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193 (*Caitlin B.*).)

8

In *Caitlin B.*, the appellate court held that a mother appealing an order terminating parental rights lacked standing to assert that an alleged father did not receive proper notice of the section 366.26 hearing. (*Id*. at p. 1193.) More recently, the appellate court in *J.R.* reached a contrary conclusion, holding that a father had standing to challenge the termination of his parental rights based on an alleged violation of the mother's right to notice. (*J.R.*, at p. 573.) Under the "unique circumstances" of that case, the court decided to "exercise [its] broad remedial discretion to reverse the order terminating *both* parents' rights . . . thereby conferring standing on father to maintain [his] appeal." (*Ibid*.)

In this case, however, we need not decide whether Mother has standing to challenge the order terminating parental rights over I.M. based on the alleged lack of proper notice to Marcos. Even assuming Mother has standing to assert this claim, we conclude she forfeited the claim on appeal because she failed to raise any objection to notice in the juvenile court, despite having repeated opportunities to do so.

Under the rule of forfeiture, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 881.) While "application of the forfeiture rule is not automatic," the appellate court's "discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.*, at p. 1293.) Moreover, such discretion "must

9

be exercised with special care" in dependency matters. (*Ibid*.) "Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*Ibid*.)

Due process requires child welfare agencies to exercise reasonable diligence in attempting to locate parents and notify them of dependency proceedings. (*J.R.*, *supra*, 82 Cal.App.5th at p. 571.) A defect in notice to a parent "is a most serious issue, potentially jeopardizing the integrity of the entire judicial process." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) "However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court." (*Ibid*.) A parent forfeits a claim on appeal based on improper notice when he or she fails to make a timely objection, and thus "deprive[s] the juvenile court of the opportunity to correct the mistake." (*Ibid*.; accord, *In re P.A.* (2007) 155 Cal.App.4th 1197, 1209–1210.)

Here, the record reflects Mother had multiple opportunities to raise an objection based on the alleged lack of proper notice to Marcos, but she failed to present that issue to the juvenile court. At the July 22, 2021 jurisdictional and dispositional hearing, the juvenile court found that DCFS completed a proper due diligence search for Marcos and his whereabouts were unknown. The court asked Mother's counsel if she had any objection to finding that notice was proper, and counsel replied she did not. At the January 19, 2022 six-month review hearing, the court again found that notice was proper without any objection from Mother's

counsel. At a June 13, 2022 nonappearance progress report hearing, the court found that DCFS's second due diligence search for Marcos was proper, and ordered notice by publication in a newspaper of general circulation. There is no indication in the record that Mother's counsel objected to that notice finding and order. DCFS proceeded to provide Marcos with notice of the section 366.26 hearing by publication in a Los Angeles-based newspaper. At the December 12, 2022 section 366.26 hearing, the court began by asking if there was any objection to notice. After Mother's counsel expressly advised the court that there was "no objection to notice," the court found that notice of the hearing was proper. On this record, Mother forfeited her claim that DCFS failed to provide Marcos with proper notice of the proceedings.

Citing *J.R.*, *supra*, 82 Cal.App.5th 569, Mother argues that we should reach the merits of her claim despite her failure to object because it raises a pure question of law. *J.R.*, however, is distinguishable. In that case, the undisputed record showed that DCFS knew the mother was not residing in the United States, but nevertheless limited its due diligence search to federal and California databases, and then purported to serve the mother with notice by publication in a Los Angeles-based newspaper. (*Id*. at p. 575.) Although the mother later contacted DCFS, disclosed her cell phone number and address in El Salvador, and expressed a desire to reunify with her son, the agency did not use any of that known contact information to provide her with notice of the proceedings. (*Id*. at p. 576.) In exercising its discretion to reach the merits of the claim that the mother was denied proper notice, the appellate court stated that whether DCFS violated the mother's right to due process was "a pure question of law." (*Id*. at

11

p. 587.)  The court also noted that "the public's interest in the due administration of justice weighs in favor of adjudicating this claim of error because [the] mother lacks any meaningful opportunity to present this claim on her own." (*Ibid*.)

In this case, the question of whether DCFS violated Marcos's due process rights by failing to exercise reasonable diligence in its efforts to locate Marcos and provide him with notice is not a pure question of law.  Mother's due process claim is largely premised on DCFS's failure to consult with her about Marcos's Facebook account despite being ordered to do so.  Yet because Mother never raised this issue in the juvenile court, the record is silent as to whether DCFS ever attempted to follow up with Mother regarding the extent of her Facebook contact with Marcos, whether Mother still had the ability to contact Marcos through Facebook or other social media, and whether DCFS could utilize any social media contact that Mother might have to find Marcos and serve him with notice of the proceedings.  Because this is a fact-specific inquiry into whether DCFS failed to pursue the most likely avenues for locating Marcos, it would have been more appropriately developed before the juvenile court.  Indeed, if Mother had asserted this claim at any of the hearings where the court found that notice was proper, then the court could have addressed the issue by ordering DCFS to either complete a social media search for Marcos or explain why it was unable to do so. Instead, Mother waited until after her parental rights were terminated to raise the issue for the first time on appeal.

In deciding whether to exercise our discretion to address the merits of Mother's due process claim, we also must consider I.M.'s interest in a stable and permanent placement.  (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.)  I.M. is three years old, and apart

12

from a few weeks in Mother's care, he has spent all of his life in the home of his prospective adoptive parents, Mr. and Mrs. V. The record reflects that I.M. is closely bonded to Mr. and Mrs. V., and that they are committed to providing the child with stability and permanency through adoption. Moreover, unlike the mother in *J.R.* who had the right to seek reunification with her child, Marcos is an alleged father with limited due process and statutory rights. An alleged father is not entitled to reunification services. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283.) Rather, " '[d]ue process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status.' " (*Ibid.*) While a biological father also is not entitled to reunification services, he may receive such services if the court finds it is in the best interests of the child. (*Ibid.*) Here, even if we were to reach the merits of Mother's claim and find reversible error, it is unclear whether a more diligent search by DCFS would be likely to locate Marcos; whether, if located, Marcos would appear in the case and attempt to elevate his paternity status; and whether, if found to be I.M.'s biological father, Marcos would be granted reunification services at this late stage based on the child's best interests.

Considering the totality of the record, we decline to exercise our discretion to reach the merits of Mother's claim that DCFS failed to conduct a reasonably diligent search for Marcos and to provide him with proper notice of the dependency proceedings. Because Mother had ample opportunity to raise an objection to notice in the juvenile court but failed to do so, she forfeited her right to assert such claim on appeal.

**DISPOSITION**

The order terminating parental rights over I.M. is affirmed.


VIRAMONTES, J.


WE CONCUR:



GRIMES, Acting P. J.



WILEY, J.